CROCKETT & ASSOCIATES
Robert D. Crockett (SBN 105628)
*bob@bobcrockettlaw.com*
Brian D. Walters (SBN 227435)
*waltersb@bobcrockettlaw.com*
Jackie K. M. Levien (SBN 301239)
*levienj@bobcrockettlaw.com*
Chase T. Tajima (SBN 304063)
*chase@bobcrockettlaw.com*
23929 Valencia Boulevard, Suite 303
Valencia, California 91355
Tel: (323) 487-1101
Fax: (323) 843-9711

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOE 1, an individual; DOE 2, an individual; DOE 3, an individual; DOE 4, an individual; Doe 5, an individual; and DOE 6, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE, a California public entity,<br><br>Defendant. | CASE NO.: 8:18-cv-01499<br><br>**COMPLAINT FOR VIOLATION OF CIVIL RIGHTS** |

Plaintiffs hereby allege, by and through their undersigned counsel, for their Complaint as follows:

## INTRODUCTION

1. On May 17, 2018, the Superior Court of California, County of Orange, the Honorable John C. Gastelum presiding, issued an order (the "May 17 Order," attached hereto as **Exhibit B**) on a motion for a protective order in *Roe 1*

*vs. Defendant Doe 1, Congregation, et al.*, Case No. 30-2014-00741722-CU-PO-CJC (the "State Litigation"). In the State Litigation, plaintiff Roe 1 alleges that defendant Does 1-3 are responsible, directly or indirectly, for sexual abuse involving one of Jehovah's Witnesses from 1994-1998.

2. During the course of the State Litigation, Roe 1 propounded discovery requests seeking documents from Doe 2, the Jehovah's Witnesses' supervisory organization, Watchtower Bible and Tract Society of New York ("Watchtower"), that relate to allegations of sexual abuse.

3. On February 21, 2018, Watchtower filed a motion for a protective order for relief from responding to certain of Roe 1's requests for production of documents on grounds that responses thereto would violate the clergy-penitent privilege and violate the constitutionally-protected privacy rights of individuals identified in the responsive documents.

4. The Court's May 17 Order partially granted and partially denied Watchtower's motion for a protective order, and ultimately ordered that Watchtower produce documents without redactions, except for the names and personal identifying information of potential victims, certain elders in the congregation, and third-party victims and participants.

5. The May 17 Order prohibits Watchtower from redacting the names of, for example, family members of victims, who frequently share last names with victims, Congregation members and friends the disclosure of whose names would disclose victims' names or otherwise cause the victims to be identifiable.

6. Plaintiffs are members of some of the congregations of Jehovah's Witnesses that supplied the documents at issue in the State Litigation to Watchtower (the "Congregations"). Each one of them is named, identified, or described in the documents that must be produced pursuant to the May 17 Order, and each one of them faces a serious risk that their privacy will be violated if the documents are produced without the redactions requested herein. Three of them are

victims whose names will be redacted, and yet each faces a risk of identification because the names of their family members will not be redacted. The other three are family members of victims who are concerned for their own privacy and for the privacy of their victim family members. All six Plaintiffs are mentioned in the documents in the context of sexual abuse, assault, and molestation—allegations that expose Plaintiffs to extreme harassment, humiliation, ridicule, social stigmatization, and physical and emotional distress, and that infringe upon their religious freedoms.

7. By this Complaint, Plaintiffs ask this Court to enjoin Defendant Superior Court of California, County of Orange, from enforcing the May 17 Order as currently issued, on grounds that the May 17 Order violates the constitutionally protected rights to privacy and religious liberty of Plaintiffs in violation of 42 U.S.C. § 1983, the United States Constitution, the Constitution of the State of California, and California law.

## PARTIES

8. Plaintiffs are individual members of the Congregations. Plaintiffs are permitted to bring this Complaint under pseudonymous names pursuant to *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058 (9th Cir. 2000).

9. Defendant Superior Court of California, County of Orange (hereinafter "Defendant"), is a public entity located and/or operating in the County of Orange and created and/or existing under the laws of the State of California.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, 1367 and 42 U.S.C. § 1983.

11. Venue is proper in the Central District of California under 28 U.S.C. § 1391(b) because Defendant is an Orange County entity and/or the events or omissions giving rise to the claims herein occurred in this District.

# FACTUAL ALLEGATIONS

## Watchtower and the 1997 Body of Elder Letter

12. Watchtower is a non-profit organization whose purpose is supporting the faith of Jehovah's Witnesses. On March 14, 1997, in an effort to ensure the spiritual cleanness and purity of the congregations of Jehovah's Witnesses in the United States, Watchtower distributed a letter to approximately 10,000 congregations of Jehovah's Witnesses (the "1997 Body of Elder Letter") instructing elders (spiritually-qualified men who take the lead in individual congregations) to send a written report to Watchtower about "anyone who is currently serving or formerly served in a [Watchtower]-appointed position in your congregation who is known to have been guilty of child molestation in the past." Watchtower instructed that this information should be kept in extreme confidence. The 1997 Body of Elder Letter also reminded elders of prior letters stating that when a known child molester moves to another congregation, a letter of introduction should be sent to the new congregation and a copy of the letter should be sent to Watchtower. A copy of this letter is attached hereto as Exhibit A.

13. In response to the 1997 Body of Elder Letter, thousands of pages of reports were written and sent to Watchtower. Many of the reports include deeply private details regarding individual Jehovah's Witnesses' experiences with sexual assault, sexual abuse, and molestation. Additionally, many of the reports include names and information about victims, perpetrators, individuals who were thought to be victims or perpetrators but in fact were not, and all sorts of third parties, including family members, friends, the elders in whom the Witnesses confided, Bible teachers, and other members of the community and/or congregation.

14. In addition, in the faith of Jehovah's Witnesses, on occasion congregation elders would send correspondence to Watchtower seeking the spiritual assistance and spiritual and Scriptural guidance of experienced elders in handling matters involving congregants who engaged in conduct that represented a

serious deviation from Biblical standards (including the sin of child abuse) separate and apart from the 1997 Body of Elder Letter. That correspondence was intended to be and was recognized by all parties involved as confidential and restricted from general circulation. When the correspondence addressed the sin of child abuse, it also contained information that was extremely private and potentially deeply humiliating or damaging. It included names and information about victims, perpetrators, individuals who were thought to be victims but in fact were not, and all sorts of third parties, including family members, friends, the elders in whom congregants confided, Bible teachers, and other members of the community and/or congregation.

**The State Litigation and the Zalkin Law Firm's Violations of Protective Orders**

15. On August 25, 2014, plaintiffs Roe 1 and Roe 2, who attended some meetings but were never Jehovah's Witnesses, initiated the State Litigation against defendants Does 1-3, who are a congregation of Jehovah's Witnesses, an alleged perpetrator, and Watchtower (identified in the State Litigation as "the supervisory organization"). The State Litigation is a civil dispute between private parties in which the State of California is not a party, intervenor, or real party in interest. It is not a criminal or quasi-criminal proceeding.

16. During the course of the State Litigation, plaintiff Roe 1 propounded on Watchtower two requests for production of documents of relevance here. Request No. 18 seeks "[a]ll letters, emails, facsimiles, or other documentary, tangible, or electronically stored information of any kind, Watchtower Bible and Tract Society of New York, Inc. received in response to the Body of Elder Letter Dated March 14, 1997," ("RFP No. 18"). Request No. 19 seeks "[a]ny and all individual written accounts, reports, summaries, letters, emails, facsimiles, and records, whether or not compiled, concerning reports of sexual abuse of children by members of the Jehovah's Witnesses, including but not limited to, Governing

1  Body members, district overseers, circuit overseers, elders, ministerial servants,
2  pioneers, publishers, baptized publishers, and individuals from the time period of
3  1979 to the present," ("RFP No. 19").

4      17.    On February 21, 2018, Watchtower filed a motion for a protective
5  order for relief from responding to RFP Nos. 18 and 19 on grounds that responses
6  thereto would violate the clergy-penitent privilege and violate the constitutionally-
7  protected privacy rights of individuals identified in the responsive documents.

8      18.    In support of Watchtower's motion for a protective order, Joel M.
9  Taylor, Watchtower's in-house counsel, submitted a declaration stating that
10 Watchtower had evidence that the Zalkin Law Firm ("Zalkin"), counsel for
11 plaintiffs in the State Litigation, would use any documents produced in response to
12 RFP Nos. 18 and 19 in a manner that violated the existing protective order and/or
13 the privacy of the people identified in the documents because Mr. Devin Storey, a
14 member of Zalkin, informed Mr. Taylor that Zalkin would file any produced
15 documents as exhibits to a motion under seal and would then move to have the
16 exhibits unsealed.  As set forth in Mr. Taylor's declaration, Mr. Storey also
17 informed Mr. Taylor that if the motion to unseal the exhibits failed, his law firm
18 knew a member of the press, Trey Bundy, and that the firm would work with Mr.
19 Bundy to file a motion on behalf of the press to have the exhibits unsealed and
20 release the documents into the public domain.  Mr. Taylor's declaration also
21 submitted evidence demonstrating that Mr. Irwin Zalkin of the Zalkin firm had
22 already used documents substantially similar to the documents that would be
23 produced in the State Litigation (which themselves were produced in an earlier
24 related case) in a manner that violated an applicable protective order for the
25 purpose of aiding him in another lawsuit, and had discussed those documents in a
26 public interview with Mr. Bundy.

27     19.    Publication of the documents could have deleterious effects on abuse
28 victims and others.

**The May 17 Order**

20. Notwithstanding Mr. Taylor's declaration and the declarations of Drs. Cohen and Younggren, on May 17, 2018, the Court issued an order partially denying and partially granting Watchtower's motion for a protective order as follows: with respect to RFP No. 18, Watchtower was ordered to respond to the request and to "redact the names and personal identifying information of potential victims of molestation and the names of the elders in the congregation who authored the responses to protect third-parties' right to privacy." With respect to RFP No. 19, the Court limited "any document production to the terms as follows: (1) redaction of personally-identifying information for alleged third-party victims and third party participants; (2) a protective order to govern use of such documents (*i.e.*, use and dissemination is limited for purposes of this litigation only); and (3) a limited scope of time from 1989-1999." With respect to both requests, the Court ordered that use and dissemination of any responsive documents be limited for purposes of the litigation only.

21. Pursuant to the May 17 Order, Watchtower is obligated to produce documents responsive to RFP Nos. 18 and 19 and is prohibited from redacting the names or identifying information of anyone who is not a victim, or an elder who authorized or signed the correspondence.

**The Impacts of the May 17 Order on Plaintiffs**

22. Plaintiff Doe 1 is a member of a congregation of Jehovah's Witnesses. Plaintiff Doe 1 is the father of a victim, a wholly disinterested person and non-party to the State Court Litigation who, on information and belief, is named, identified, or otherwise described in Document 1, a document that is currently subject to production without redactions relating to Plaintiff Doe 1 under the May 17 Order. On information and belief, Document 1 states that in approximately late 1996 or early 1997, Plaintiff Doe 1 was accused of, investigated for, and

exonerated of, sexual abuse of his daughter, Plaintiff Doe 2, after she sustained a bruise injury to her vagina while riding a bicycle. During the course of the secular investigation conducted by social services and the police, as well as the spiritual investigation conducted by elders of a Congregation, Plaintiff Doe 2 admitted that she had engaged in masturbation, had played in a sexual manner with a toy stuffed rabbit, and that she had watched sexually explicit movies that initiated her sexual thoughts and conduct. Plaintiff Doe 2 told the investigators that her father, Plaintiff Doe 1, had never touched her inappropriately in any way. Pursuant to the recommendation of the social services investigators, the District Attorney declined to file charges against Plaintiff Doe 1 and he was exonerated. Because Plaintiff Doe 1 is not a victim or other person subject to redaction under the May 17 Order, Watchtower will not be permitted to redact Plaintiff Doe 1's name when Document 1 is produced. If this Court does not enjoin the May 17 Order and require that, at minimum, Plaintiff Doe 1's name and other identifying information (such as his wife's name) be redacted, the information in Document 1 will become known to attorneys, experts, and possibly others in the State Litigation and elsewhere, and Plaintiff Doe 1 will face a serious risk of extreme harassment, humiliation, ridicule, social stigmatization, professional repercussions such as job loss or reputation harm, and physical and emotional distress. Such an intrusion in this deeply personal and private matter that was intended for religious review would inhibit Plaintiff Doe 1 and his family's ability to freely exercise their faith without fear of government intervention.  Moreover, Plaintiff Doe 2's identity will become known because, even though her name will be redacted as a victim, she shared her father's last name at the time. Plaintiff Doe 1 is concerned for his privacy as well as that of his daughter, Plaintiff Doe 2.

    23.    Plaintiff Doe 2 is a member of a congregation of Jehovah's Witnesses. Plaintiff Doe 2 is a victim and, on information and belief, is named, identified, or

otherwise described in Document 1,[1] a document that is currently subject to production without redactions relating to Plaintiff Doe 2's father, Plaintiff Doe 1, under the May 17 Order. On information and belief, Document 1 states that in approximately 1997, Plaintiff Doe 1 was accused of, investigated for, and exonerated of, sexual abuse of his daughter, Plaintiff Doe 2, after she sustained a bruise injury to her vagina while riding a bicycle. During the course of the secular investigation conducted by social services and the police, and a spiritual investigation conducted by elders of the Congregation, Plaintiff Doe 2 admitted that she had engaged in masturbation, had played in a sexual manner with a toy stuffed rabbit, and that she had watched sexually explicit movies that initiated her sexual thoughts and conduct. Plaintiff Doe 2 told the investigators that her father, Plaintiff Doe 1, had never touched her inappropriately in any way. Pursuant to the recommendation of the social services investigators, the District Attorney declined to file charges against Plaintiff Doe 1 and he was exonerated. As a victim, Plaintiff Doe 2's name will be redacted when Document 1 is produced under the May 17 Order, but her father's will not. If this Court does not enjoin the May 17 Order and require that, at minimum, Plaintiff Doe 1's name and other identifying information (such as his wife's name) be redacted, the information in Document will become known to attorneys, experts, and possibly others in the State Litigation and elsewhere, and Plaintiff Doe 2's identity will become known because, even though her name will be redacted as a victim, she shared her father's last name at the time. Plaintiff Doe 2 will, therefore, face a serious risk of extreme harassment, humiliation, ridicule, social stigmatization, professional repercussions such as job loss or reputation harm, and physical and emotional distress. Such an intrusion in this deeply personal and private matter that was intended for religious review

---

[1] As Plaintiffs Does 1 and 2 are both named or identified in Document 1, this Complaint intentionally omits any reference to a Document 2 for the sake of clarity. Instead, allegations pertaining to Plaintiff Doe 3 are made with reference to Document 3, allegations pertaining to Plaintiff Doe 4 are made with reference to Document 4, and so forth.

would inhibit Plaintiff Doe 2's ability to freely exercise her faith without fear of government intervention. Plaintiff Doe 2 is concerned for her privacy.

24. Plaintiff Doe 3 is a member of a congregation of Jehovah's Witnesses. Plaintiff Doe 3 is a victim and, on information and belief, is named, identified, or otherwise described in Document 3, a document that is currently subject to production without redactions relating to Plaintiff Doe 3's parents under the May 17 Order. On information and belief, Document 3 states that Plaintiff Doe 3 was sexually abused for years by her father, who fondled her breasts and touched her in the vaginal area. As a victim, Plaintiff Doe 3's name will be redacted when Document 3 is produced under the May 17 Order, but her father's and mother's will not. If this Court does not enjoin the May 17 Order and require that, at minimum, Plaintiff Doe 3's parents' names and other identifying information to be redacted, the information in Document 3 will become known in the State Litigation and Plaintiff Doe 3's identity will become known because, even though her name will be redacted as a victim, the identity of the victim referred to in Document 3 will be abundantly clear. Plaintiff Doe 3 will, therefore, face a serious risk of extreme harassment, humiliation, ridicule, social stigmatization, and physical and emotional distress. Old wounds would be unnecessarily reopened. Plaintiff Doe 3 is concerned for her privacy since the abuse ended long ago in 1977.

25. Plaintiff Doe 4 is a member of a congregation of Jehovah's Witnesses. Plaintiff Doe 4 is the father of a victim and, on information and belief, is named, identified, or otherwise described in Document 4, a document that is currently subject to production without redactions relating to Plaintiff Doe 4 under the May 17 Order. On information and belief, Document 4 states that for years, starting in 1985, Plaintiff Doe 4's daughter was sexually abused more than 40 times by another member of the Congregation, who made her perform oral sex on him and was ultimately disfellowshipped after an investigation by the elders of the Congregation. This perpetrator was prosecuted and sentenced to prison for 30

years and was released after 16 years. The perpetrator is now living in the victim's community as a registered sex offender. Because Plaintiff Doe 4 is not a victim or other person subject to redaction under the May 17 Order, Watchtower will not be permitted to redact Plaintiff Doe 4's name when Document 4 is produced. If this Court does not enjoin the May 17 Order and require that, at minimum, Plaintiff Doe 4's name and other identifying information be redacted, the information in Document 4 will become known in the State Litigation and Plaintiff Doe 4 will face a serious risk of extreme harassment, humiliation, ridicule, social stigmatization, professional repercussions such as job loss or reputation harm, and physical and emotional distress. Moreover, Plaintiff Doe 4's daughter's identity will become known because, even though her name will be redacted as a victim, she shares her father's last name. Plaintiff Doe 4 is concerned for his privacy as well as that of his daughter, who, as a result of the abuse, has become an alcoholic, has attempted suicide, and cannot live without adult support.

26. Plaintiff Doe 5 is a member of a congregation of Jehovah's Witnesses. Plaintiff Doe 5 is a victim and, on information and belief, is named, identified, or otherwise described in Document 5, a document that is currently subject to production without redactions relating to Plaintiff Doe 5's brother under the May 17 Order. On information and belief, Document 5 states that Plaintiff Doe 5, starting in the early 1960s, was sexually abused by her brother starting from when she was 12 and he was 14 years old. The abuse lasted for two years. As a victim, Plaintiff Doe 5's name will be redacted when Document 5 is produced under the May 17 Order, but her brother's will not. If this Court does not enjoin the May 17 Order and require that, at minimum, Plaintiff Doe 5's brother's name and other identifying information be redacted, the information in Document 5 will become known in the State Litigation and Plaintiff Doe 5's identity will become known because, even though her name will be redacted as a victim, she shares her brother's last name. Plaintiff Doe 5 will, therefore, face a serious risk of extreme

harassment, humiliation, ridicule, social stigmatization, professional repercussions such as job loss or reputation harm, and physical and emotional distress. Plaintiff Doe 5 is concerned for her privacy.

27. At all relevant times, Plaintiff Doe 6 was a member of a congregation of Jehovah's Witnesses. On information and belief, Plaintiff Doe 6 and his two sons are named, identified, or otherwise described in Document 6, a document that is currently subject to production without redactions relating to Plaintiff Doe 6 or his older son under the May 17 Order. On information and belief, Document 6 states that when Plaintiff Doe 6's older son was 12 years old, he watched a television program concerning different religious practices. From that television program, his son somehow got the idea to put his mouth on his infant brother's genitals. Although the conduct was not intentionally sexual in nature, Plaintiff Doe 6's older son was spiritually troubled by his behavior throughout his early teen years, until he finally confessed to his father and some elders from their Congregation about what he had done. Plaintiff Doe 6 provided information about his son's actions toward his infant brother to the elders of his Congregation to seek help ensuring all concerned retained a healthy relationship with God. Some of the information shared with congregation elders was, on information and belief, put into Document 6. On information and belief, the letter was written so that the elders could seek spiritual direction and advice from elders assisting Watchtower regarding whether Plaintiff Doe 6's older son should be considered an abuser, which was not clear given his youth and the limited nature of the conduct. Plaintiff Doe 6 and his older son provided that information to receive spiritual guidance and reprieve, fully believing that it would be kept in extreme confidence, and would be shared only among the elders who were involved and the elders at Watchtower. Because Plaintiff Doe 6 and his older son are not victims or other persons subject to redaction under the May 17 Order, Watchtower will not be permitted to redact Plaintiff Doe 6's name or that of his older son when Document 6 is produced. If

this Court does not enjoin the May 17 Order and require that, at minimum, Plaintiff Doe 6's name, the name of his older son, and other identifying information be redacted, Plaintiff Doe 6's younger son will be easily identified, even if his name is redacted, as they share the same last name.  His involvement in a spiritual investigation into childhood conduct, and the details of that conduct, will become known to attorneys, experts, and possibly others in the State Litigation and elsewhere.  Such a secular examination of this deeply personal and private matter that was solely intended for religious review would inhibit their family's ability to freely exercise their faith without fear of government intervention, including having privately confessed concerns to their spiritual leaders not kept confidential. As Jehovah's Witnesses, they deeply believe that confession to the elders and repentance are essential to attain to salvation.  To this day, Plaintiff Doe 6's younger son, who is now an adult, is unaware of the investigation or his older brother's one-time physical contact, as he was just an infant at the time and no one has ever discussed this matter with him.  Plaintiff Doe 6 is thus gravely concerned about the impact on his younger son's privacy and well-being if Document 6 is produced without redacting his name and his older son's name.  Moreover, Plaintiff Doe 6's younger son currently has a good relationship with his brother, and Plaintiff Doe 6 is concerned that their relationship could be damaged if Document 6 becomes known.  Likewise, Plaintiff Doe 6 is concerned for his older son's privacy and his own if Document 6 becomes known.  They have a reasonable fear of extreme harassment, humiliation, ridicule, social stigmatization, professional repercussions such as job loss or reputation harm, and physical and emotional distress if Document 6 is produced without redacting Plaintiff Doe 6's name and his older son's name.  Plaintiff Doe 6 has grave concerns about his privacy rights, as well as those of both his sons, and wants to protect the voluntary confession of his son who was seeking spiritual reprieve, a confession Plaintiff Doe 6 encouraged him to make in complete confidentiality to their spiritual

leaders.

28. Moreover, given the statements made by Mr. Storey to Mr. Taylor, as set forth in Mr. Taylor's declaration in the State Litigation, and the other conduct of the Zalkin Law Firm, Plaintiffs are concerned that Documents 1-6 will be used in a manner that violates the protective order entered in the State Litigation and/or their privacy, as the Zalkin Law Firm has made clear its desire to get the documents into the public domain, without any regard for the harm that would cause to Plaintiffs and other individuals identified in the documents.

**The May 17 Order's Other Impacts on Victims of Abuse**

29. To be sure, disclosure of any scintilla of third party information, including but not limited to the names of the individuals or even the congregations involved, could have far-reaching and traumatic consequences for victims of abuse. Documentation filed in the State Litigation indicates, and Plaintiffs herein confirm, that Congregations bear the name of the areas in which they are located, and they are comprised of small numbers of fellow-worshippers. Thus, the identification of Congregations in the documents at issue would necessarily lead to the identification of the victims and others involved.

30. It is not difficult to imagine the horrors survivors of abuse could experience if they woke up one morning and discovered that deeply personal and private matters they had discussed in a confidential religious setting were now publicly available on the Internet. That is the avowed purpose of the Zalkin Law Firm in the State Litigation. Production pursuant to the May 17 Order, as currently issued, creates a genuine risk that a survivor may engage in self-harm or commit suicide.

**COUNT 1 – U.S. CONST. AMENDS. IV, V, XIV**

31. Plaintiffs repeat, reallege, and incorporate the allegations in paragraphs 1-30 as if fully set forth herein.

32. By compelling the disclosure of the names or other identifying

information of Plaintiffs or their family members, Defendant will unlawfully and substantially deprive Plaintiffs of the privacy rights secured by the IV, V, and XIV Amendments of the United States Constitution, in violation of 42 U.S.C. § 1983.

33. Plaintiffs have no adequate remedy at law to avert this harm. Plaintiffs are entitled to a declaratory judgment and injunctive relief prohibiting Defendant from ordering production of the documents, unless Plaintiffs' names and other identifying information, or the names of Plaintiffs' family members as herein requested, are redacted.

**COUNT 2 – CONST. OF STATE OF CALIFORNIA, ART. I, § 1**

34. Plaintiffs repeat, reallege, and incorporate the allegations in paragraphs 1-33 as if fully set forth herein.

35. By compelling the disclosure of the names or other identifying information of Plaintiffs or their family members, Defendant will unlawfully and substantially deprive Plaintiffs of the privacy rights secured by the Constitution of the State of California, Art. I, § 1.

36. Plaintiffs have no adequate remedy at law to avert this harm. Plaintiffs are entitled to a declaratory judgment and injunctive relief prohibiting Defendant from ordering production of the documents, unless Plaintiffs' names and other identifying information, or the names of Plaintiffs' family members as herein requested, are redacted.

**COUNT 3 – U.S. CONST. AMEND. I**

37. Plaintiffs repeat, reallege, and incorporate the allegations in paragraphs 1-36 as if fully set forth herein.

38. By compelling the disclosure of the names or other identifying information of Plaintiffs or their family members, Defendant will unlawfully and substantially deprive Plaintiffs of the religious liberties secured by the Free Exercise and Establishment Clauses of the First Amendment of the United States Constitution, in violation of 42 U.S.C. § 1983.

39. By compelling the disclosure of the names or other identifying information of Plaintiffs or their family members, Defendant will unlawfully and substantially deprive Plaintiffs of the protections afforded by the clergy-penitent privilege, in violation of California Evidence Code § 1033, which provides that "a penitent, whether or not a party, has a privilege to refuse to disclose, and to prevent another from disclosing, a penitential communication if he or she claims the privilege."

40. Plaintiffs have no adequate remedy at law to avert this harm. Plaintiffs are entitled to a declaratory judgment and injunctive relief prohibiting Defendant from ordering production of the documents, unless Plaintiffs' names and other identifying information, or the names of Plaintiffs' family members as herein requested, are redacted.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiffs request judgment be entered in their favor and against Defendant as follows:

a. An order declaring that the Plaintiffs have protectable privacy rights in the documents that are subject to the May 17 Order.

b. An order granting preliminary injunctive relief from taking any action to enforce, implement, or otherwise achieve the document productions provided for in the May 17 Order as currently issued, with respect to the unredacted names or identifying information of Plaintiffs or their family members;

c. An order permanently enjoining Defendant from taking any action to enforce, implement, or otherwise achieve the document productions provided for in the May 17 Order as currently issued, with respect to the unredacted names or identifying information of Plaintiffs or their family members;

d. A judgment declaring that the May 17 Order, as currently issued, violates the United States Constitution and is null and void;

e. A judgment declaring that the May 17 Order, as currently issued,

violates the Constitution of the State of California, Art. I, § 1 and is null and void;

      f.      Damages in an amount to be determined at trial;

      g.      An award to Plaintiffs of their reasonable attorneys' fees and costs under 42 U.S.C. § 1988; and

      h.      Such additional or different relief as the Court deems just and proper.

Date: August 23, 2018                Respectfully submitted,

                                          CROCKETT & ASSOCIATES

                                          By  /s/ Robert D. Crockett
                                              Attorneys for Plaintiffs

4812-0539-6075, v. 2