DEVIN M. STOREY, ESQ. (#234271)
ALEXANDER S. ZALKIN, ESQ. (280813)
The Zalkin Law Firm, P.C.
12555 High Bluff Drive, Suite 301
San Diego, CA 92130
Tel:  858-259-3011
Fax:  858-259-3015
Email: dms@zalkin.com
        alex@zalkin.com

Attorneys for Intervenors

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOE 1, an individual; DOE 2, an individual; DOE 3, an individual; DOE 4, an individual; DOE 5, an individual; and DOE 6, an individual<br><br>              Plaintiffs,<br><br>v.<br><br>SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE, a California public entity,<br><br>              Defendant. | Case No: 8:18-cv-01499 DOC (JDEx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**<br><br>**Date:  November 28, 2018**<br>**Time:  7:30 a.m.**<br>**Courtroom:  9D**<br><br>**Judge:  David O. Carter**<br>**Magistrate Judge:  John D. Early**<br><br>**Complaint Filed: 8-23-18** |

1

**TABLE OF CONTENTS**

2

I.   INTRODUCTION.............................................................1

3

II.  12(b)(6) STANDARD....................................................3

4

III. THE ELEVENTH AMENDMENT REQUIRES
     DISMISSAL OF PLAINTIFFS' CLAIMS...........................3

5

6

IV.  DOES 1-6 HAVE NO STANDING TO MAINTAIN
     THIS ACTION SINCE THEY HAVE NOT ALLEGED

7

     ANY IMMINENT INJURY...............................................5

8

9

     A. Does 1-6 Have Not Alleged That Any Injury is Imminent...............6

10

        1.  Doe 1-6's Claim That They Will Be Harmed
            When Documents 1-6 Are Published to the Public is

11

            Too Speculative and Hypothetical to Satisfy the Injury

12

            in Fact Requirement........................................................6

13

        2.  Plaintiffs' "Concern[]" That Roe 1's Attorneys Will
            Intentionally Breach a Protective Order And Release

14

            Documents 1-6 Publicly is Both Unsupported and
            Conjectural to the Point of Failing to Establish an

15

            Injury in Fact...................................................................8

16

        3.  Watchtower's Production of Documents to Opposing

17

            Counsel in Litigation – With Some Redactions and
            Subject to a Protective Order – is Not an Injury to

18

            Does 1-6 That Can Satisfy the Injury in Fact

19

            Requirement......................................................................11

20

V.   THIS ACTION TO PREVENT THE DISCLOSURE OF
     INFORMATION RELATING TO SEXUAL ABUSE TO

21

     INTERVENORS' LAWYERS IS MOOT BECAUSE BY

22

     COMMENCING THIS ACTION DOES 1-6 HAVE
     OPENED THEMSELVES TO DISCOVERY ON THAT

23

     ISSUE....................................................................................12

24

VI.  DOES 1-6 ARE COLLATERALLY ESTOPPED FROM

25

     RELITIGATING THE SAME PRIVACY AND
     CONSTITUTIONAL ISSUES LITIGATED TO FINALITY

26

     ON THEIR BEHALVES IN *LOPEZ* AND *PADRON*.....................14

27

28

i

VII.   PLAINTIFFS HAVE NOT ALLEGED FACTS
       SUPPORTING THE ISSUANCE OF A PRELIMINARY
       INJUNCTION.................................................................16

       A.  Does 1-6 Have Not Alleged That They Will Suffer
           Any Irreparable Harm in the Absence of an
           Injunction.............................................................17

       B.  Plaintiffs Cannot Establish a Likelihood of Success
           on the Merits........................................................18

           1.  California Privacy (Count 2)..............................18

           2.  First Amendment (Count 3)...............................20

           3.  Federal Privacy (Count 1)................................20

       C.  A Balancing of Interests Tips Sharply Against the
           Issuance of a Preliminary Injunction......................21

VIII.  CONCLUSION.................................................24

# TABLE OF AUTHORITIES

**Cases**

Alch v. Superior Court
    (2008) 165 Cal.App.4th 1412..................................................18,19

Britt v. Superior Court
    20 Cal.3d 844 (Cal. 1978)........................................................12

DKN Holdings LLC v. Faerber
    61 Cal.4th 813 (Cal. 2015)......................................................14

Doe 2 v. Superior Court
    132 Cal.App.4th 1504 (2005)...................................................16

Gottlieb v. Kest
    141 Cal.App.4th 110 (2006).....................................................15

Hill v. National Collegiate Athletic Assn.
    (1994) 7 Cal.4th 1.................................................................18

In re Clergy Cases I
    188 Cal.App.4th 1224 (2010)...................................................19

Lopez v. Watchtower Bible and Tract Society of New York, Inc.
    246 Cal.App.4th 566 (2016)..............................................passim

Padron v. Watchtower Bible and Tract Society of New York, Inc.
    16 Cal.App.5th 1246 (2017)...............................................passim

Pioneer Electronics (USA), Inc. v. Superior Court
    (2007) 40 Cal.4th 360.....................................................18,19,20

Rodgers v. Sargent Controls & Aerospace
    136 Cal.App.4th 82 (2006)......................................................16

Teitelbaum Furs, Inc. v. Dominion Ins. Co., Ltd.
    58 Cal.2d 601 (1962)..............................................................14


**Federal Court Cases**

Ashcroft v. Iqbal
    556 U.S. 662, 678 (2009).........................................................3

Bell Atl. Corp. v. Twombly
    550 U.S. 544, 570 (2007).........................................................3

C & C Prods., Inc. v. Messick
    700 F.2d 635, 636–37 (11th Cir.1983)........................................13

*Clapper v. Amnesty Intern. USA*
568 U.S. 398, 133 (2013).................................................................6

*Disney Enterprises, Inc. v. VidAngel, Inc.*
224 F.Supp.3d 957, 965 (C.D. Cal. 2016)......................................17

*Doe v. Beard*
201463 F.Supp.3d 1159, 1168 (C.D. Cal. 2014)............................13

*Doe No. 1 v. Reed*
697 F.3d 1235, 1238 (9th Cir. 2012)..............................................12

*Edelman v. Jordan*
415 U.S. 651, 663 (1974)..................................................................5

*Employees v. Missouri Dep't of Pub. Health and Welfare*
411 U.S. 279, 280 (1973)..................................................................4

*Fayer v. Vaughn*
649 F.3d 1061, 1064 (9th Cir. 2011)................................................3

*Greater Los Angeles Council on Deafness, Inc. v. Zolin*
812 F.2d 1103, 1110 (9th Cir. 1987)................................................4

*L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*
634 F.2d 1197, 1203 (9th Cir.1980)...............................................21

*Lujan v. Defenders of Wildlife*
504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).................6

*Manzarek v. St. Paul Fire & Marine Ins. Co.*
519 F.3d 1025, 1031 (9th Cir. 2008)................................................3

*MCA Records, Inc. v. Charly Records, Ltd.*
865 F.Supp. 649, 652 (C.D. Cal. 1994)..........................................14

*Mitchell v. Los Angeles Cmty. Coll. Dist.*
861 F.2d 198, 201 (9th Cir. 1988)....................................................4

*Munaf v. Geren*
553 U.S. 674 690 (2008).................................................................18

*NAACP v. Button*
371 U.S. 415 (1963).........................................................................5

*O'Shea v. Littleton*
4414 U.S. 488, 497, 94 (1974)..........................................................6

*Pennhurst State School & Hospital v. Halderman*
465 U.S. 92, 100 (1984)................................................................4,5

*Protectmarriage.com-Yes on 8 v. Bowen*
752 F.3d 827, 834 (9th Cir 2014)...................................................13

iv

*Regents of the Univ. of Calif. v. Doe*
    519 U.S. 425, 429 (1997)…………………………………………4

*Shaw v. California Dep't of Alcoholic Beverage Control*
    788 F.2d 600, 603 (9th Cir.1986)………………………………4

*Shwarz v. United States*
    234 F.3d 428, 435 (9th Cir. 2000)………………………………3

*Spokeo, Inc. v. Robins*
    136 S.Ct. 1540, 1547, 194 L.Ed.2d 635 (2016)…………………5

*Stormans, Inc. v. Selecky*
    586 F.3d 1109, 1138 (9th Cir. 2009)…………………………21

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*
    551 U.S. 308, 322 (2007)………………………………………8

*Thomas v. Anchorage Equal Rights Com'n*
    220 F.3d 1134, 1138-1139 (9th Cir. 2000)……………………8

*W. Mining Council v. Watt*
    643 F.2d 618, 624 (9th Cir. 1981)………………………………3

*Warth v. Seldin*
    422 U.S. 490, 518, 95 (1975)…………………………………6

*Whitmore v. Arkansas*
    495 U.S. 149, 158, 110 (1990)…………………………………6

*Winter v. Natural Resources Defense Council, Inc.*
    555 U.S. 7, 24, 129 (2008)……………………………………16

*Woods v. Carey*
    2007 WL 4556987 *1 (E.D. Cal. 2007)………………………17


**Statutes**

Cal. Code Civ. Proc. 425.14………………………………………22
Cal. Code Civ. Proc. 583.310……………………………………23
Cal. Pen. Code § 11161…………………………………………23
Cal. R. Ct. 2.550-2.551…………………………………………8,9
Cal. R. Ct. 2.550(d)(1)…………………………………………22
Cal. R. Ct. 2.551(a)……………………………………………9
Cal. R. Ct. 2.551(b)……………………………………………9
Cal. R. Ct. 2.551(h)(2)…………………………………………9
Fed. R. Civ. Proc. 12(b)(6)……………………………………3


**Miscellaneous**

Child Abuse Prevention and Treatment Act 42 U.S.C. § 5106a(8)……..…………21
https://www.scpr.org/programs/reveal/2016/12/09/28946/………………………10

v

## I.  INTRODUCTION

In case after case Watchtower Bible and Tract Society of New York, Inc. (Watchtower) has fought against producing documents evidencing its institutional awareness of child molestation by Jehovah's Witnesses.  In case after case, California courts have considered Watchtower's assertions of the clergy-penitent privilege, First Amendment and third party privacy rights as justifications for non-production, and rejected them.  In case after case, Watchtower has disobeyed court orders to produce the documents.

The fight over Watchtower's obligation to produce the documents, and the consequences of Watchtower's many refusals to comply with discovery orders to produce the molestation documents, has resulted in two published appellate decisions and a third, currently pending appeal.  (*Lopez v. Watchtower Bible and Tract Society of New York, Inc.*, 246 Cal.App.4th 566 (Cal.App. 2016); *Padron v. Watchtower Bible and Tract Society of New York, Inc.*, 16 Cal.App.5th 1246, 1250 (Cal.App. 2017) ["Watchtower has obstinately refused to comply with the order, consistently attempting to reargue the very discovery issues the court already decided"]; *JW v. Mountain View Congregation of Jehovah's Witnesses, et al.*, Riverside County Case No. MCC 1300850, Court of Appeal Case No. E066555.)

In *Lopez*, the appellate court affirmed Watchtower's obligation to produce the molestation documents but reversed the trial court's decision to impose terminating sanctions against Watchtower before attempting lesser sanctions.  (246 Cal.App.4th at 590, 607.)  In *Padron*, the court affirmed an order sanctioning Watchtower $4,000 for each day that it did not gather and produce certain molestation documents.  (16 Cal.App.5th at 1249-1250.)  In *JW*, Watchtower's answer was stricken as a sanction for refusing to produce the same documents at issue in *Padron*.

1       The litigation over the molestation documents continued in what Does 1-6 refer to as "the

2    State Litigation." (*Roe 1, et al v. Defendant Doe 1, Congregation, et al.*, Orange County Case

3    No. 30-2014-00741722-CU-PO-CJC.)   There, Roe 1 and Roe 2 brought an action seeking

4    damages arising from molestation by a Jehovah's Witness.  (Dkt. # 1, Compl. at ¶ 1.)  Roe 1

5    demanded that Watchtower produce records of nationwide molestation complaints.  (Dkt. # 1,

6    Compl. at ¶ 2.)  Watchtower filed a motion for protective order, which was denied.  (Dkt. # 1,

7    Compl. at ¶¶ 3, 4.)  Watchtower advanced the same First Amendment, privilege and privacy

8    arguments that it had previously lost, and Judge Gastelum, unsurprisingly, followed *Lopez* and

9    *Padron*.  (Dkt. # 1, Compl. at ¶¶ 4-5.)

10      Instead of pursuing an available state court remedy – a Petition for Writ of Mandate

11    challenging the May 17 Order - Watchtower seeks to forum shop the case to what it perceives as

12    a friendlier venue in which to continue its efforts to obstruct discovery.[1]  Though nominally

13    filed on behalf of Does 1-6, this action was instituted in an effort to absolve Watchtower from

14    producing the molestation documents in the State Litigation, and concomitantly, to avoid

15    discovery sanctions when it refuses to comply.

16      This action raises the same First Amendment, privacy and privilege arguments that were

17    litigated in *Padron*, *Lopez* and the State Litigation.  Rather than indulging Watchtower's forum-

18    shopping efforts, this action should be dismissed because: 1) Plaintiffs' efforts to sue an arm of

19    the State of California are flatly prohibited by the Eleventh Amendment; 2) Plaintiffs have no

20    standing to bring this action because they have suffered no injury in fact and none is imminent;

21    3) the action is moot because the harm Does 1-6 seek to avoid – production of the documents –

---

[1] It takes little effort to see through Watchtower's use of Does 1-6 as proxies for this action. Doe 1-6's attorney – Robert Crockett – has no history litigating on behalf of Watchtower. Although Does 1 and 2 have some connection, there is no alleged connection between the other Plaintiffs, i.e., the Complaint gives no reason to believe that Does 1 and 6 know each other. As such, one wonders how Mr. Crockett came to represent a disparate collection of Jehovah's

will occur in the course of litigating this action; 4) Does 1-6 are collaterally estopped from re-litigating this issue; and 5) Plaintiffs cannot satisfy several requirements for the issuance of a preliminary injunction.

## II.  12(B)(6) STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an action for failure to allege "enough facts to state a claim to relief that is plausible on its face." (*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).) "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." (*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal citations omitted).

Generally, a court accepts the truth of factual allegations in the complaint and views the pleadings in the light most favorable to the nonmoving party.  (*Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).)  But, the court may set aside allegations that are contradicted by judicially noticeable facts. (*Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000).)  Nor is the Court required to "assume the truth of legal conclusions merely because they are cast in the form of factual allegations."  (*Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).) Does 1-6 have failed to allege a set of facts from which a claim for relief is plausible on its face.

## III. THE ELEVENTH AMENDMENT REQUIRES DISMISSAL OF PLAINTIFFS' CLAIMS

All claims brought by Plaintiffs for damages against the Superior Court, or based on substantive rights under California law must be dismissed with prejudice.  It is black letter,

---

Witnesses in this litigation.  The answer is clear, Watchtower handpicked Does 1-6 to represent its interests in this action and then connected them with Mr. Crockett.

hornbook law that a citizen cannot sue a State in federal court for damages without the express consent of the state. The Eleventh Amendment provides:

> The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

(U.S. Const., amend. XI.) The Eleventh Amendment establishes that "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state." (*Pennhurst State School & Hospital v. Halderman* 465 U.S. 92, 100 (1984) *quoting Employees v. Missouri Dep't of Pub. Health and Welfare,* 411 U.S. 279, 280 (1973).) "[T]he reference to actions 'against one of the United States' encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities." (*Regents of the Univ. of Calif. v. Doe*, 519 U.S. 425, 429 (1997)) (citations and internal quotation marks omitted).

Plaintiffs here characterize the defendant Court as a "public entity." This is incorrect. The Superior Court of California is a "state entity" or "arm of the state," and as such is wholly immune from suit *qua* an entity. "[A] suit against the Superior Court is a suit against the State, barred by the eleventh amendment." (*Greater Los Angeles Council on Deafness, Inc. v. Zolin*, 812 F.2d 1103, 1110 (9th Cir. 1987) *citing Shaw v. California Dep't of Alcoholic Beverage Control*, 788 F.2d 600, 603 (9th Cir.1986).) The immunity extends to suits in law and equity. (*Greater Los Angeles Council on Deafness*, 812 F.2d at 1110 n.10. ["Since the eleventh amendment by its terms bars suits against a state 'in law or equity,' our holding necessarily applies also to plaintiffs' claims against the Superior Court for injunctive and declaratory relief"]); *see also Mitchell v. Los Angeles Cmty. Coll. Dist.*, 861 F.2d 198, 201 (9th Cir. 1988) ["Under the eleventh amendment, agencies of the state are immune from private damage actions or suits for injunctive relief brought in federal court. *Pennhurst State School & Hosp. v.*

*Halderman*, 465 U.S. 89, 100 (1984) (eleventh amendment proscribes suit against state agencies 'regardless of the nature of the relief sought'"].)  Additionally, "a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment." (*Edelman v. Jordan*, 415 U.S. 651, 663 (1974).)  Thus, there is simply no viable way for Plaintiffs to maintain their claim here against the Superior Court itself.

Furthermore, the nature of the suit is barred on abstention grounds.  As *Pennhurst* explained, "[a] federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law. On the contrary, it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law.  Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment." (*Pennhurst*, 465 U.S. at 106.)  There is no constitutional right of privacy in records kept by a religious institution recognized anywhere in federal law.  The closest any federal right comes to such protection is the shielding of membership lists of private organizations where some type of retaliation is reasonably likely.  (*See NAACP v. Button*, 371 U.S. 415 (1963).)  There is no allegation or reasonable apprehension that counsel will use the information sought to discriminate against or oppress these Plaintiffs.  But even if there was, there is no basis on which to sue the State of California or its instrumentalities in federal court over such a concern. Plaintiffs claims are ill-conceived and must be dismissed.

## IV. DOES 1-6 HAVE NO STANDING TO MAINTAIN THIS ACTION SINCE THEY HAVE NOT ALLEGED ANY IMMINENT INJURY

Any plaintiff in a federal action must allege that he or she has standing to bring the suit. As an "irreducible constitutional minimum" standing requires a plaintiff to prove that he or she "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." (*Spokeo, Inc.*

Case No: 8:18-cv-01499 DOC (JDEx)
MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF NOTICE OF MOTION TO DISMISS

*v. Robins*, 136 S.Ct. 1540, 1547, 194 L.Ed.2d 635 (2016).) The plaintiff bears the burden of establishing standing and, at the pleading stage, must "clearly ... allege facts demonstrating" each element. (*Id.*, quoting *Warth v. Seldin*, 422 U.S. 490, 518, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).) To establish an injury in fact, "a plaintiff must show that he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." (*Id.*, quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).)

### A. Does 1-6 Have Not Alleged That Any Injury is Imminent.

The Plaintiffs' claim to standing falls out because no injury is "actual or imminent." Plaintiffs concede that they have not yet suffered any injury because Watchtower has not produced the documents. (*See, e.g.*, Dkt. # 1, Compl. at ¶ 22, ["Watchtower will not be permitted to redact Plaintiff Doe 1's name *when* Document 1 is produced"]) (italics added.) Given that Plaintiffs cannot allege an actual injury, standing requires that they instead must establish that a particularized and concrete injury is imminent. This, Plaintiffs have not done.

### 1. Doe 1-6's Claim That They Will Be Harmed When Documents 1-6 Are Published to the Public is Too Speculative and Hypothetical to Satisfy the Injury in Fact Requirement.

Plaintiffs seek to establish the imminence of an injury by alleging that "[p]ublication of the documents could have deleterious effects on abuse victims and others." (Dkt. # 1, Compl. at ¶ 19.) But this alleged injury is extremely speculative because publication of the documents requires several prerequisite acts; none of which is certain to occur. "Allegations of possible future injury do not satisfy the requirements of Art. III. A threatened injury must be certainly impending to constitute injury in fact." (*Whitmore v. Arkansas*, 495 U.S. 149, 158, 110 S.Ct. 1717 (1990)) (quotations omitted); *see also O'Shea v. Littleton*, 4414 U.S. 488, 497, 94 S.Ct. 669 (1974); *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 133 S.Ct. 1138 (2013).)

For any injury to occur Watchtower must actually produce the documents to Intervenors' counsel with compliant redactions.  This is not going to happen.  In three prior cases Watchtower was ordered to produce these documents with limited redactions, and in each case it refused to do so (*Lopez*, 246 Cal.App.4th 566; *Padron*, (2017) 16 Cal.App.5th 1246; *JW v. Mountain View Congregation of Jehovah's Witnesses*, et al., Riverside County Case No. MCC 1300850, Court of Appeal Case No. E066555), even to the point of suffering terminating sanctions.  Plaintiffs have not alleged that Watchtower will comply with the May 17 Order, and they cannot do so.  Indeed, given that months have passed since Watchtower was ordered to produce the documents, and Plaintiffs cannot allege compliance has occurred, there is every reason to believe that Watchtower will never comply with the May 17 Order.  Without compliance, there can be no injury to Does 1-6.  This reality brings into sharp focus the purpose of this action: to prevent Intervenors from obtaining discovery sanctions against Watchtower in the State Litigation when Watchtower refuses to comply.  Does 1-6 will not suffer any injury in fact.

Even if Watchtower defied all odds and complied with the May 17 Order, Does 1-6 would suffer no injury unless Intervenors actually file Documents 1-6 in the state court action.  If Intervenors choose not to use those particular documents, Does 1-6 are not injured.  If the trial court grants summary judgment on Intervenors' claims before the documents can be admitted, Does 1-6 are not injured.  If Judge Gastelum determines that Documents 1-6 are, for any reason, inadmissible, then Does 1-6 are not injured.  Again, any possible injury to Does 1-6 is highly speculative.

Finally, even if Watchtower did produce the documents with compliant redactions, and Intervenors filed them, there is no injury.  Plaintiffs have recognized that Intervenors will lodge the documents conditionally under seal in compliance with the state court protective order.

(Dkt. # 1, Compl. at ¶ 18.)   As a result, no responsive documents will become publicly accessible until the state court has heard and ruled on a motion to make the sealing permanent. (Cal. R. Ct. 2.550-2.551; Ex. 1, Protective Order at p. 5, ¶ 7.[2])   Even then, the unredacted versions of the documents may not be published.   The court could grant the motion to seal, or could rule that less redacted versions of the documents be sealed and that redacted versions be publicly filed.  (Cal. R. Ct. 2.551.)  Plaintiffs concede that production of redacted documents would protect their interests.  (*See, e.g.*, Dkt. # 1, Compl. at ¶ 22 [asking this Court to require that "Plaintiff Doe 1's name and other identifying information (such as his wife's name) be redacted"].)  Thus, Plaintiffs will only suffer the alleged injury if: 1) Watchtower chooses to change course and actually produce unredacted documents; 2) the particular documents mentioning Does 1-6 are filed in connection with a motion or at trial; and 3) the state court denies Watchtower's motion to permanently seal the documents and orders that unredacted documents be filed in the court's public file.  This highly speculative chain of events is far too conjectural to be an injury in fact sufficient to confer standing.[3]

> ### 2.   Plaintiffs' "Concern[]" That Roe 1's Attorneys Will Intentionally Breach a Protective Order And Release Documents 1-6 Publicly is Both Unsupported and Conjectural to the Point of Failing to Establish an Injury in Fact.

Does 1-6 alternatively argue they will suffer irreparable injury if the May 17 Order is enforced because they are concerned that Intervenors' attorneys "would use any documents . . . in a manner that violated the existing protective order."  (Dkt. # 1, Compl. at ¶ 18.)  Nonsense.

---

[2] On a motion to dismiss, a court may consider "documents incorporated into the complaint by reference." (*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).)  Here, Plaintiffs alleged that a protective was entered in the State Litigation, but did not allege any details of that order.  Because the protective order was incorporated into the complaint by reference, Intervenors attached the protective order as Exhibit 1 to this motion to dismiss.

[3] For the same reasons, this matter is not ripe for judicial determination.  (*See Thomas v. Anchorage Equal Rights Com'n*, 220 F.3d 1134, 1138-1139 (9th Cir. 2000) ["in measuring whether the litigant has asserted an injury that is real and concrete rather than speculative and hypothetical, the ripeness inquiry merges almost completely with standing"].)

8

1    Plaintiffs' mere "concern[]" that a protective order could be violated is wildly speculative and

2    comes nowhere close to establishing an injury in fact.

3        Regardless, the allegations in the complaint attempting to justify this allegation either do

4    not support Plaintiffs' conclusion, or are easily refuted.   Indeed, there is no reason to believe

5    that Intervenors' lawyers would violate any protective order.   Does 1-6 allege attorney Devin

6    Storey told Watchtower's lawyer Joel Taylor that he would seek to file documents in the

7    litigation; lodge those documents under seal; then oppose a motion to make the sealing

8    permanent, or possibly cooperate in the filing of a motion to unseal the documents at a later

9    time. (Dkt. # 1, Compl. at ¶ 18.)

10       The protective order that governs the production of these documents addresses this issue

11   as follows:

12
> Should Protected Information be submitted to the Court, such submission shall be made
> under seal to preserve the confidential nature of the Protected Information . . . The
> producing Party shall retain the right to move to seal such Protected Information in
> accordance with California Rules of Court, Rule[s] 2.550-2.551.   Nothing in this
> agreement shall be interpreted to prohibit any non-producing party, or non-party, from
> opposing such a motion to seal, or filing a motion to unseal documents, to the extent
> permitted by California Rules of Court, Rule[s] 2.550-2.551.

(Ex. 1, Protective Order at p. 5, ¶ 7.)

    California law expressly forbids the permanent sealing of documents pursuant to an

agreement of the parties.    (Cal. R. Ct. 2.551(a).)    Instead, documents may be lodged

conditionally under seal until such time as a motion to permanently seal the documents can be

heard. (Cal. R. Ct. 2.551(b).)  If a document is ordered sealed, a subsequent motion to unseal

the document may be brought by a party or "member of the public."  (Cal. R. Ct. 2.551(h)(2).)

In other words, Does 1-6 have not alleged any reasonable basis to believe that Storey will

breach the protective order.  Instead, Plaintiffs have very clearly alleged Storey's intention to

strictly comply with the protective order and the California sealed records rules.  Plaintiffs have

9

alleged no risk whatsoever that the documents would be published in violation of any law or order.

Does 1-6 also allege that attorney Irwin Zalkin violated a previous protective order in the context of a media interview.[4] (Dkt. # 1, Compl. at para. 18.) This is false. Watchtower made the same argument after *Lopez* was remanded. The argument is based on a radio segment entitled "Secrets of the Watchtower." That segment contains multiple interviews of Zalkin occurring at different times. In an interview that post-dated Watchtower's production of heavily redacted documents in the *Lopez* case, Zalkin refused to show the documents to the reporter, and stated that "[a]ll I can really say is we have the documents. I can't say what's in them. I can't say how many of the documents, how much, numbers, or anything like that." (Ex. 2, Secrets of the Watchtower at pp. 4-5.) Zalkin explained:

Irwin Zalkin:   "We keep the materials locked up in that cabinet."

Trey Bundy:    "And you can't show them to me?"

Irwin Zalkin:   "No, I can't show them to you."

Trey Bundy:    "Why not?"

Irwin Zalkin:   Because it would violate the terms of that protective order I think."

(Ex. 2, Secrets of the Watchtower at p. 15.) Zalkin's statements complied with the protective order and clearly evidence that he has every intention of continuing to comply.

In an interview occurring when Watchtower's answer was stricken as a discovery sanction in the *Lopez* case, i.e., occurring *before* Watchtower ever produced any documents in *Lopez* and *before* Zalkin had seen the documents, Zalkin explained that Watchtower had refused to respond to a request for "[d]ocuments that go back decades and show the depth and the

---

[4] Since Plaintiffs have incorporated the radio segment into their complaint by reference, Intervenors have attached a transcript of the radio segment during which Zalkin allegedly violated the protective order as Exhibit 2. The segment can be heard in its entirety at https://www.scpr.org/programs/reveal/2016/12/09/28946/

10

breadth of their knowledge of child predators within their organizations. Child molesters within their organization. They refused to produce those documents and for that reason, for that reason, they were sanctioned by this court and their defense was terminated." (Ex. 2, Secrets of the Watchtower at p. 5.) It is this statement that Does 1-6 contend was a breach of a protective order. But this statement was made before Watchtower had produced any documents and before there was any protective order to breach. Zalkin simply explained what he expected the documents to contain. Zalkin never violated any protective order.

Doe 1-6's "concern" that a violation of a protective order could occur if the May 17 Order is enforced is speculative, and Doe 1-6's allegations either do not support its accusations against The Zalkin law Firm, or alternatively are flatly refuted. Does 1-6 have not shown that any injury is imminent.

### 3. Watchtower's Production of Documents to Opposing Counsel in Litigation – With Some Redactions and Subject to a Protective Order – is Not an Injury to Does 1-6 That Can Satisfy the Injury in Fact Requirement.

Plaintiffs argue that without an injunction "Document 1 will become known to attorneys, experts, and possibly others in the State Litigation and elsewhere. . ." (Dkt. # 1, Compl. at ¶ 22.) In other words, Intervenors' lawyers will be given access to Document 1. But this is an "injury" that could occur in any lawsuit. Any plaintiff or defendant could refuse to comply with discovery simply because a document may contain the names of witnesses. If this were the rule, parties would be unable to litigate and the courts would come to a standstill. So, parties routinely produce documents subject to protective orders that prevent third parties from experiencing any injury. There is such an order in the State Litigation. There is no injury here.

Regardless, this alleged injury also fails to satisfy the injury in fact requirement because Plaintiffs have already inflicted this injury on themselves. By commencing this action,

Plaintiffs expose themselves to litigation over the viability of their claims for injunctive relief. (*See Britt v. Superior Court*, 20 Cal.3d 844, 860 (Cal. 1978) ["[w]hen such associational activities are directly relevant to the plaintiff's claim, and disclosure of the plaintiff's affiliations is essential to the fair resolution of the lawsuit, a trial court may properly compel such disclosure"].)  During the litigation, the Defendant and Intervenors will undoubtedly be allowed discovery to determine whether the allegations in the complaint are true.  Does 1-6 have alleged their understanding of the content of Documents 1-6, and Intervenor will seek those documents from Watchtower to disprove Doe 1-6's claims. Intervenors will undertake other discovery for this same purpose, including written discovery and possibly depositions of Does 1-6.  In other words, by filing this lawsuit and subjecting themselves to discovery, Does 1-6 have ensured that the exact "injury" they filed this lawsuit to prevent will come to pass.

## V.  THIS ACTION TO PREVENT THE DISCLOSURE OF INFORMATION RELATING TO SEXUAL ABUSE TO INTERVENORS' LAWYERS IS MOOT BECAUSE BY COMMENCING THIS ACTION DOES 1-6 HAVE OPENED THEMSELVES TO DISCOVERY ON THAT ISSUE.

To fulfill the case or controversy requirement of Article III, there must be a live controversy as to which effective relief can be granted.  (*Doe No. 1 v. Reed*, 697 F.3d 1235, 1238 (9th Cir. 2012.)  "In deciding a mootness issue, the question is not whether the precise relief sought at the time the application for an injunction was filed is still available. The question is whether there can be any *effective* relief."  (*Ibid.*)

In *Doe*, the Ninth Circuit found that it could not grant effective relief when the harm the lawsuit was filed to prevent had already occurred.  There, the plaintiffs sought to enjoin state actors from releasing the names of signatories to petitions supporting a state referendum.  (*Id.* at 1237.)  The documents had already been disseminated in response to FOIA requests and had been published on websites not under the control of the state actors.  (*Id.* at 1238-1239.)

12

1    Because the documents were already publicly available, the court could not grant effective relief

2    preventing their dissemination.  The Court noted that:

3            a case seeking to keep a document secret is moot once third parties have control over
             copies of the document. *See C & C Prods., Inc. v. Messick*, 700 F.2d 635, 636–37 (11th
4            Cir.1983) (dismissing appeal as moot because plaintiff's "sole assignment of error is that
             the district court erred in modifying the protective order to permit [a third party] to
5            utilize the discovery materials," but the materials had been released to the third party and
             "no order from this court can undo that situation").
6    (*Doe*, 697 F.3d at 1239; *see also Protectmarriage.com-Yes on 8 v. Bowen*, 752 F.3d 827, 834

7    (9th Cir 2014 ["[w]e are unable to effectively remedy a present controversy between the parties

8    where a plaintiff seeks to enjoin an activity that has already occurred, and we cannot "undo"

9    that action's allegedly harmful effects"]; *Doe v. Beard*, 201463 F.Supp.3d 1159, 1168 (C.D. Cal.

10   2014) ["in many cases, this one included, an injunction would be moot by the time the case was

11   fully litigated"].)

12

13           If one accepts that Plaintiffs' alleged damage resulting from some possible future

14   publication of Documents 1-6 is too speculative to satisfy the injury in fact requirement, then

15   this Court cannot grant effective relief.  In that case, the only possible injury Plaintiffs have

16   alleged is that Intervenors' attorneys would be given access to Documents 1-6.  (Dkt. # 1,

17   Compl. at ¶ 22.)  But, as an intervening party, Intervenors will have the ability to conduct

18   discovery to confirm the allegations in the complaint.  By becoming a Plaintiff in this action,

19   Does 1-6 have subjected themselves to much greater scrutiny on these issues than the state

20   court's order.

21

22           Given that Plaintiffs have filed this action to prevent Intervenors' attorneys from

23   learning information about the sexual abuse claims with which they have been involved, and by

24   filing this lawsuit Intervenors' attorneys will obtain that information and more during the

25   discovery process, this Court cannot grant an effective remedy.  The case is moot.

26

27

28

13

## VI. DOES 1-6 ARE COLLATERALLY ESTOPPED FROM RELITIGATING THE SAME PRIVACY AND CONSTITUTIONAL ISSUES LITIGATED TO FINALITY ON THEIR BEHALVES IN *LOPEZ* AND *PADRON*

Collateral estoppel precludes relitigation of issues argued and decided in prior proceedings. (*Teitelbaum Furs, Inc. v. Dominion Ins. Co., Ltd.*, 58 Cal.2d 601, 604 (Cal. 1962).) Federal courts weighing the effect of California judgments apply California collateral estoppel law. (*MCA Records, Inc. v. Charly Records, Ltd.*, 865 F.Supp. 649, 652 (C.D. Cal. 1994).) In California, collateral estoppel applies: "(1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party." (*DKN Holdings LLC v. Faerber*, 61 Cal.4th 813, 825 (Cal. 2015).) These criteria are satisfied by Watchtower's past assertion of privacy rights on behalf of Does 1-6, and others, in *Lopez* and *Padron*.

In *Padron*, the trial court ordered Watchtower to produce documents identical to RFP 18. (16 Cal.App.5th at 1251.) To protect the privacy rights of third parties, the *Padron* trial court ordered the documents should be produced "redacting only the names and personal identifying information of victims of molestation and the names of the elders in the congregation who authored the responses." (*Id.* at 1257.) The court found "this approach 'would not impose a serious invasion of any privacy interests, particularly with a confidentiality protective order in place, such as the one in this case.' " (*Ibid.*) This is the exact approach employed by Judge Gastelum in the State Litigation.

On appeal, Watchtower invoked the privacy rights of third parties, including Does 1-6. Watchtower listed "various privacy rights it claim[ed] exist[ed] and assert[ed] the production of less redacted documents would violate these privacy rights." (*Id.* at 1271.) As here, Watchtower claimed the privacy rights are violated because "Padron's counsel [The Zalkin Law Firm] will not comply with" the protective order. (*Ibid.*) Watchtower also argued that "the

production of the redacted documents under the confidentiality and nondisclosure order would violate its and its members' First Amendment rights." (*Ibid.*)   The *Padron* appellate court rejected all of these arguments. (*Ibid.* ["we agree with the superior court that third party privacy rights are adequately protected by the procedures in place" and "[w]e . . . determine that the First Amendment is not violated by the production of documents responsive to" the request].)[5]

Thus, in a case involving one of the categories of documents at issue here, with identical permissible redactions and a nearly-identical protective order, the California Court of Appeal considered and rejected the same arguments raised by Does 1-6 in this action.   This is nothing more than an attempt to change venue and relitigate an issue finally decided by state courts.

Turning to the elements of collateral estoppel: first, the decisions in the *Lopez* and *Padron* appeals are final adjudications.   Supreme Court review was not sought in *Padron* and was denied in *Lopez*.   Second and third, between the two appeals, the discoverability of every document at issue in the state court action was considered.   Judge Gastelum handled the clergy-penitent privilege issue in precisely the same manner as the trial court in *Lopez*, and ordered the same redactions as in *Padron*.   Both *Lopez* and *Padron* rejected First Amendment challenges regarding the production.   The same issues raised by Does 1-6 were actually litigated and decided in the prior appellate proceedings.

Fourth, while Does 1-6 were not parties to the *Lopez* and *Padron* appeals, they were in privity with Watchtower.   For purposes of privity, "[d]ue process requires that the nonparty have had an identity or community of interest with, and adequate representation by, the party in

---

[5] In *Lopez*, Watchtower was ordered to produce categories of documents substantively identical to RFPs 18 and 19, but over a broader time period. (246 Cal.App.4th at 576.)   Watchtower's clergy-penitent privilege objections were overruled because it failed to establish preliminary facts supporting the privilege, but Watchtower was given the option of preparing a privilege log raising the privilege as to specific documents. (*Id.* at 596.)   Judge Gastelum followed the same approach.   The *Lopez* appellate court affirmed the trial court's treatment of the clergy-penitent privilege and also rejected Watchtower's assertion of the First Amendment as a means of avoiding production of the documents. (246 Cal.App.4th at 598-599.)

15

the first action." (*Gottlieb v. Kest*, 141 Cal.App.4th 110, 149-150 (Cal.App. 2006)) (citations and quotations omitted.) "A party is adequately represented for purposes of the privity rule if his or her interests are so similar to a party's interest that the latter was the former's virtual representative in the earlier action." (*Id.* at 150) (quotation omitted.) The courts 'measure the adequacy of representation by inference, examining whether the party in the suit which is asserted to have a preclusive effect had the same interest as the party to be precluded, and whether that ... party had a strong motive to assert that interest. (*Ibid.*) (quotations omitted.) "[P]rivity appertains 'against one who did not actually appear in the prior action where the unsuccessful party in the first action might fairly be treated as acting in a representative capacity for a nonparty." (*Rodgers v. Sargent Controls & Aerospace*, 136 Cal.App.4th 82, 93 (Cal. App. 2006)) (quotation omitted.)

Watchtower was more than a virtual representative of Doe 1-6's interest in the previous litigation. Watchtower actually stood in their shoes when asserting Doe 1-6's actual privacy rights; the same exact rights at issue here. (*See Doe 2 v. Superior Court*, 132 Cal.App.4th 1504, 1520 (Cal.App. 2005).) Watchtower affirmatively asserted Doe 1-6's interests and raised the same clergy-penitent privilege, First Amendment and privacy issues Does 1-6 seek to assert in this action.

## VII.   PLAINTIFFS HAVE NOT ALLEGED FACTS SUPPORTING THE ISSUANCE OF A PRELIMINARY INJUNCTION

"A preliminary injunction is an extraordinary remedy never awarded as of right." (*Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24, 129 S.Ct. 365 (2008).) To obtain the preliminary injunctive relief they have requested, Does 1-6 must establish that they are likely to succeed on the merits, are likely to suffer irreparable harm if a preliminary injunction is not awarded, that a balancing of equities favors the Plaintiffs, and that an injunction is in the public interest. (*Id.* at 20.)

16

In the Ninth Circuit, " 'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support the issuance of an injunction, provided that the plaintiff also shows irreparable harm and that the injunction is in the public interest." (*Disney Enterprises, Inc. v. VidAngel, Inc.*, 224 F.Supp.3d 957, 965 (C.D. Cal. 2016).) A "serious question" is one on which the plaintiff has a fair chance of success on the merits. (*Ibid.*) Does 1-6 cannot establish any irreparable harm or likelihood of success on the merits, and a balancing of the equities favors Intervenors.

### A. Does 1-6 Have Not Alleged That They Will Suffer Any Irreparable Harm in the Absence of an Injunction.

"Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction. A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must demonstrate *immediate threatened injury* as a prerequisite to preliminary injunctive relief." (*Disney Enterprises, Inc. v. VidAngel, Inc.*, 224 F.Supp.3d 957, 966 (C.D. Cal. 2016)) (emphasis added.)  The *possibility* that a litigant may suffer irreparable harm is not enough. (*See Winter*, 555 U.S. at 22.)

Here, a convoluted series of events must occur before Does 1-6 will suffer their alleged injury: Watchtower would have to produce the documents with the limited redactions ordered by Judge Gastelum (which has not happened); Intervenors would then have to file Documents 1-6 in the state court action (which may never happen); and Judge Gastelum would have to deny Watchtower's motion to seal the documents after they were filed (which requires a hearing, a full balancing of interests, and an additional court order.)  Does 1-6 have alleged nothing more than the possibility that some harm may occur at some point down the road.  This is not sufficient to establish irreparable harm.

**B. Plaintiffs Cannot Establish a Likelihood of Success on the Merits.**

To prevail on their request for a preliminary injunction Plaintiffs must establish a likelihood of success on the merits. If "the probability of success on the merits is low, preliminary injunctive relief should be denied." (*Woods v. Carey*, 2007 WL 4556987 *1 (E.D. Cal. 2007).) Does 1-6 cannot meet their burden. Initially, the Eleventh Amendment, lack of standing, ripeness, mootness, and other grounds already explained weigh heavily against a finding of likelihood of success on the merits. (*See Munaf v. Geren*, 553 U.S. 674 690 (2008) ["success more unlikely due to potential impediments to even reaching the merits"].) And, Does 1-6 face an insurmountable obstacle to establish likelihood of success on the merits because these exact claims (at least Counts 2 and 3) have already been repeatedly rejected by California State appellate courts. (*See Lopez*, 246 Cal.App.4th 566, *Padron* 16 Cal.App.5th 1246.) These claims were also rejected by the trial court in *JW* and by Judge Gastelum. If these claims have repeatedly been lost, how can it be likely that Does 1-6 will succeed on the merits now? Notwithstanding these preliminary issues, Does 1-6 do not have a strong likelihood of success on any of their claims.

**1. California Privacy (Count 2)**

Under California law, "the right of privacy protects the individual's ***reasonable*** expectation of privacy against a ***serious*** invasion." (*Pioneer Electronics (USA), Inc. v. Superior Court* (2007) 40 Cal.4th 360, 370 [emphasis in original].) Because "privacy interests are best assessed separately and in context" the starting point in analyzing an assertion of privacy is to specifically identify the privacy interest at issue. (*Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 37.) Next, the court must determine whether the privacy claimant possesses a "reasonable expectation of privacy under the specific circumstances, including customs, practices, and physical settings surrounding particular activities [which] may create or inhibit

reasonable expectations of privacy," and whether a serious invasion of that privacy interest is threatened. (*Alch v. Superior Court* (2008) 165 Cal.App.4th 1412, 1423.)  If either of these elements is lacking, the privacy assertion fails.  If both elements exist, the court must balance the strength of the privacy interest against all competing interests to determine whether the disclosure of information is warranted. (*Pioneer Electronics*, 40 Cal.4th at 371.)

While some of the privacy rights asserted by Does 1-6 cannot be supported by a reasonable expectation of privacy (privacy of congregations, etc.), and a balancing of interests favors unredacted production (*see, e.g., In re Clergy Cases I*, 188 Cal.App.4th at 1224, 1234 (Cal.App. 2010)), Plaintiffs' claims unquestionably fail to establish that production of the documents to Intervenors' counsel, with redaction of names of victims and elders and subject to a protective order, would constitute a serious invasion of any privacy interest.[6]

When determining whether privacy concerns are impacted, the court must consider whether "[p]rotective measures, safeguards and other alternatives may minimize the privacy intrusion. "For example, if intrusion is limited and confidential information is carefully shielded from disclosure except to those who have a legitimate need to know, privacy concerns are assuaged." (*Pioneer Electronics*, 40 Cal.4th at 370.)  In fact, the court in *Alch v. Superior Court* criticized the trial court for failing to consider the impact of a strict protective order on putative

---

[6] With regard to the "expectation of privacy" prong, Doe 1-6's efforts to assert privacy rights on behalf of other individuals whose names appear in the documents subject to the May 17 Order (Dkt # 1, Compl. at ¶¶ 29-30) also fails.  "It is well settled that the right of privacy is purely a personal one; it cannot be asserted by anyone other than the person whose privacy has been invaded, that is, plaintiff must plead and prove that his privacy has been invaded." (*Flynn v. Higham*, 149 Cal.App.3d 677, 683 (Cal.App. 1983).)  This makes sense because the personal circumstances of each privacy claim is distinct.  Some victims of abuse identified in those documents have publicly disclosed the acts surrounding their abuse.  Others would undoubtedly welcome the opportunity to do so.  Some molesters have surely been convicted of child molestation, or have otherwise admitted to allegations of abuse and thereby forfeited privacy protections. (*See In re Clergy Cases I*, 188 Cal.App.4th at 1234.)  Other third parties identified in the documents will be deceased and no longer have any privacy interest to protect. (*See Flynn*, 149 Cal.App.3d at 683 ["right does not survive but dies with the person"].)  There will be multitudes of third parties identified in the documents – victims, perpetrators and others – who

19

privacy rights.  (165 Cal.App.4th at 1439 ["[t]he court's failure to address the significance of a strong protective order in reducing privacy concerns, and to articulate why the order in this case did not suffice with respect to any of the information requests, again disregards the teaching of *Pioneer*"]; *see also Padron*, 16 Cal.App.5th at 1270-1271 [the exact "third party privacy rights [at issue here] are adequately protected by" a protective order limiting the use of the documents, and limited redaction.)  As an established matter of California law, production of the documents, with some redaction and subject to a protective order, is not a serious invasion of a privacy interest.  Plaintiffs' State privacy claims fail.

### 2. First Amendment (Count 3)

Does 1-6 claim that the May 17 Order violated the First Amendment by declining to find that the California clergy-penitent provided a blanket privilege for Watchtower to refuse to produce every single responsive document without consideration of the circumstances surrounding the statements included in the particular documents.  (Dkt # 1, Compl. at ¶ 39.) The May 17 Order merely finds that Watchtower failed to establish the preliminary facts necessary to invoke the privilege, and orders Watchtower to "produce a detailed privilege log for the court to determine if a particular document is indeed privileged."  Since Judge Gastelum made no final order regarding the privilege, there can be no constitutional violation.

### 3. Federal Privacy (Count 1)

It bears recalling that all the May 17 Order requires is that Watchtower produce the molestation documents to Intervenors' counsel, with specified redactions, for purposes limited by a strict protective order.  Does 1-6 contend that this production violates their Federal privacy rights.  This is wrong.  It is significant that both Federal and State law *require* disclosure of information relating to child abuse to enable criminal investigations.   Given that these

---

do not have a reasonable expectation of privacy in keeping the information in the documents secret.  Plaintiffs' assertion of a blanket privacy right fails to recognize this reality.

mandatory reporting laws are more invasive of privacy rights than the May 17 Order, there is no basis for finding a constitutional violation here.

California law requires many professionals that deal with children to report child abuse to the authorities, whether the child wants the report to be made or not. (Cal. Pen. Code § 11161, et seq.) Nor is the concept of mandatory reporting a purely state issue. Under the Child Abuse Prevention and Treatment Act, codified at 42 U.S.C. § 5106a(8), the United States provides grants to states for the purposes of "developing, facilitating the use of, and implementing research-based strategies and training protocols for individuals mandated to report child abuse and neglect." The Safe Sport Authorization Act of 2017 also contains affirmative mandatory reporting requirements. Thus, under both federal and state law, some disclosure of information regarding child abuse victims and perpetrators is required.

The purpose of mandatory reporting is to allow law enforcement to investigate suspected child abuse. It is no stretch to say that the suspected victim and perpetrator are likely to be interviewed in such circumstances. This is far more intrusive than the May 17 Order, which allows only minimal use of the molestation documents. Given these mandatory reporting provisions, there can be no violation of any Federal privacy right caused by the disclosure of information in litigation - with victim names redacted - subject to a protective order limiting the use and dissemination of the documents.

## C.  A Balancing of Interests Tips Sharply Against the Issuance of a Preliminary Injunction.

To obtain a preliminary injunction, Does 1-6 must establish that a balancing of interests tips in their favor. In weighing this issue, this Court has a "duty ... to balance the interests of all parties and weigh the damage to each." (*See L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1203 (9th Cir.1980). This includes the interests of intervenors. (*Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138 (9th Cir. 2009).)

On one side, Does 1-6 have no legitimate interest in seeing an injunction granted. This lawsuit is filed for the purpose of keeping Watchtower from facing discovery sanctions for its non-compliance with the May 17 Order. Period. As discussed above, Plaintiffs have not alleged that Watchtower actually intends to produce the documents as ordered. Given Watchtower's steadfast refusal to produce the documents when ordered in prior cases, and the several months that have elapsed without compliance since the May 17 Order was issued, this oversight is significant. If the documents are not produced as ordered (*see Lopez*) or if they are produced in more heavily redacted form (*see Padron*), then Does 1-6 are not harmed in any way. Indeed, part of the relief Does 1-6 seek is for the documents to be produced with greater redactions. (Dkt # 1, Compl. at ¶ 22.) If Does 1-6 are not harmed by enforcement of the order, they have no legal interest in seeing it enjoined.

Even if the documents are produced as ordered, they are subject to a protective order that prevents any disclosure of the documents without a further court order, which would occur after Judge Gastelum performs a balancing of interests, including Doe 1-6's interests in seeing the documents sealed. (*See* Cal. R. Ct. 2.550(d)(1).) Doe 1-6's interests are fully protected by the May 17 Order and the protective order.

Intervenors, on the other hand have substantial interests in continuing to litigate this issue in the State court. The trial judge who has been presiding over this case for four years determined that Intervenors are entitled to receive the molestation documents in the form specified in the May 17 Order. Two courts of appeal – *Lopez* and *Padron* – have also determined that these documents are discoverable.

Being deprived of these documents greatly disadvantages Intervenors who, for instance, need the documents to pursue a motion to amend their complaint to allege punitive damages against Watchtower. As a religious corporation, no claim for punitive damages can be alleged

against Watchtower until discovery has been had and a showing made of likely success on the merits of the punitive damage claim. (Cal. Code Civ. Proc. 425.14.) Watchtower's institutional awareness of the prevalence of child molestation within the organization, the circumstances under which it occurs, and the inadequacy of its policies for educating children, responding to allegations of abuse and supervising both children and those known to have engaged in child molestation in the past, are a centerpiece of Intervenors' potential claim for punitive damages. Without the ability to enforce the May 17 Order and seek production of the documents, as ordered, Intervenors will likely be deprived of any ability to seek punitive damages against Watchtower – to their great detriment.

Notwithstanding the punitive damage issue, Watchtower's non-production of the documents as ordered limits Intervenor's ability to fully investigate, build, and present their case. Given Watchtower's non-production, Intervenors have no opportunity for follow up discovery to show Watchtower's knowledge of the likelihood of molestation in circumstances like those presented in the State Litigation.

These are enormous obstacles that are intended to benefit Watchtower and disadvantage Intervenors. These issues are magnified by the impending trial of the State action in March of 2019. If this Court preliminarily enjoins Intervenors' efforts to seek compliance with the trial court order, Intervenors' will have to abandon the portions of their claim based on Watchtower's institutional awareness of the overwhelming risk of child molestation that results from Watchtower's faulty child molestation education and response policies. Nor is mere continuance of the state court trial a realistic option. California state actions must commence trial within five years of filing. (Cal. Code Civ. Proc. § 583.310.) That period expires in August of 2019.

23

If this Court preliminarily enjoins Judge Gastelum from enforcing his order, and then later dissolves that injunction after Does 1-6's claims become moot during the litigation of this action, or when they fail to prevail when seeking a permanent injunction, the trial date will have come and gone, or alternatively will be too imminent to allow additional discovery regarding the molestation documents.   Granting a preliminary injunction causes immense harm to Intervenors, is of no benefit to Does 1-6, and results in a huge windfall to Watchtower who is the unseen party lurking behind this action.

## VIII.   CONCLUSION

For the foregoing reasons, this Court should dismiss the complaint with prejudice.

THE ZALKIN LAW FIRM, P.C.

Dated:  October 29, 2018

By: /s/ Devin M. Storey
Attorney for Intervenors

24