**Exhibit B**

**SUPERIOR COURT OF CALIFORNIA,
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER**

1304301.00002
Doe 2: Watchtower
ELD CCB SLC DMP APL RA

**MINUTE ORDER**

DATE: 05/17/2018    TIME: 10:53:00 AM    DEPT: C11
JUDICIAL OFFICER PRESIDING: John C. Gastelum
CLERK: Jodi Roa
REPORTER/ERM: None
BAILIFF/COURT ATTENDANT: Gaylene D Show

CASE NO: **30-2014-00741722-CU-PO-CJC**  CASE INIT.DATE: 08/25/2014
CASE TITLE: **Roe 1 vs. Defendant Doe 1, Congregation**
CASE CATEGORY: Civil - Unlimited    CASE TYPE: PI/PD/WD - Other

EVENT ID/DOCUMENT ID: 72814391
**EVENT TYPE**: Under Submission Ruling

**APPEARANCES**

There are no appearances by any party.

Motion for Discovery Protective Orders

The Court, having taken the above-entitled matter under submission on 05/08/2018, now makes the following ruling as attached hereto and incorporated herein by reference.

Court orders Clerk to give notice.

11. Roe 1 v. Defendant Doe 1, Congregation

Motion for Discovery Protective Orders

The matter previously taken under submission, the Court now rules as follows: Defendant Doe 2, Supervisory Organization's Motion for Protective Order from Responding to Plaintiff Rudy P.'s Second Set of Requests for Production of Documents, Nos. 18 and 19:

With respect to request **no. 18**, Defendant's request for a protective order is DENIED in part. Defendant has failed to sufficiently meet its initial burden of establishing that the clergy-penitent privilege applies. In addition, the court finds there is an insufficient showing of a violation of the Constitution. However, the disclosure of any information should redact the names and personal identifying information of potential victims of molestation and the names of the elders in the congregation who authored the responses to protect third-parties' right to privacy. In addition, use and dissemination of information is limited for purposes of this litigation only.

With respect to request **no. 19**, the court GRANTS Defendant's request for a protective order in part and limits any document production to the terms as follows: (1) redaction of personally-identifying information for alleged third-party victims and third party participants; (2) the use and dissemination is limited for purposes of this litigation only; and (3) a limited scope of time from 1989-1999.

Moving Party is to give notice.

**Request No. 18**

Request No. 18 provides: "All letters, emails, facsimiles, or other documentary, tangible, or electronically stored information of any kind, Watchtower Bible and Tract Society of New York, Inc. received in response to the Body of Elder Letter Dated March 14, 1997."

"The March 14, 1997 letter instructed elders to send a written report to Watchtower about 'anyone who is currently serving or who formerly served in a [Watchtower]-appointed position in your congregation who is known to have been guilty of child molestation in the past.' Watchtower said this information should be kept confidential, and instructed elders to place the reports in a 'Special Blue' envelope. The March 14 letter also reminded elders of prior letters stating that when a known '*child molester*' moves to another congregation, a letter of introduction should be sent to the new congregation and copies of the letter should be sent to Watchtower in the 'Special Blue' envelopes." (*Lopez v. Watchtower Bible and Tract Society of New York, Inc.* (2016) 246 Cal.App.4th 566, 576 fn. 4; *Padron v. Watchtower Bible and Tract Society of New York, Inc.* (2017) 16 Cal.App.4th 1246, 1251-52.)

The issue is whether or not this request infringes on the clergy-penitent privilege, infringes on third-parties' right to privacy, and otherwise violates the Constitution of the United States.

Evidence Code section 1030 provides: "[A] 'member of the clergy' means a priest, minister, religious practitioner, or similar functionary of a church or of a religious denomination or religious organization."

Evidence Code section 1032 provides: " '[P]enitential communication' means a communication made in confidence, in the presence of no third person so far as the penitent is aware, to a member of the clergy who, in the course of the discipline or practice or the clergy member's church, denomination, or

organization, is authorized or accustomed to hear those communications and, under the discipline or tenets of his or her church, denomination, or organization, has a duty to keep those communications secret."

Evidence Code section 1033 provides: "[A] penitent, whether or not a party, has a privilege to refuse to disclose, and to prevent another from disclosing, a penitential communication if he or she claims the privilege." In addition, Evid. Code § 1034 provides: "[A] member of the clergy, whether or not a party, has a privilege to refuse to disclose a penitential communication if he or she claims the privilege."

"'The priest-penitent privilege recognizes the human need to disclose to a spiritual counselor, in total and absolute confidence, what are believed to be flawed acts or thoughts and to receive priestly consolation and guidance in return." (*Conti v. Watchtower Bible & Tract Society of New York, Inc.* (2015) 235 Cal.App.4th 1214, 1229.)

The privilege claimant has the initial burden of proving the preliminary facts to show that the privilege applies. Once the claimant establishes the preliminary facts, the burden shifts to the opponent of the privilege. To obtain disclosure, the opponent must rebut that statutory presumption of confidentiality or show waiver. (*Roman Catholic Archbishop of Los Angeles v. Superior Court* (2005) 131 Cal.App.4th 417, 442.)

"In order for a statement to be privileged, it must satisfy all of the conceptual requirements of a penitential communication: 1) *it must be intended to be in confidence;* 2) it must be made to a member of the clergy who in the course of his or her religious discipline or practice is authorized or accustomed to hear such communications; and 3) such member of the clergy *has a duty under the discipline or tenets of the church, religious denomination or organization to keep such communications secret.*" (*Roman Catholic Archbishop of Los Angeles v. Superior Court* (2005) 131 Cal.App.4th 417, 443–444.)

Here, Defendant Doe 2, Supervisory Organization, has failed to meet its initial burden of establishing that the purported documents are privileged. The communication at issue here not appear to be between a penitent and a priest for purposes of consolation and guidance; it is between Watchtower and elders, for requested the elders to disclose the identities of persons appointed in positions that have been guilty of child molestation in the past. There is insufficient evidence showing a communication made between a *penitent and a member of the clergy, in the presence of no third person, intended to be in confidence*. The court finds the Declaration of Richard Ashe, Jr. insufficient to establish that the communication in response to the March 14, 1997 letter was between a penitent and a member of the clergy, in the presence of no third person, intended to be in confidence.

Even assuming there may be some documents that should be protected via the priest-penitent privilege, Defendant is ordered to produce a detailed privilege log for the court to determine if a particular document is indeed privileged. (*See, Lopez v. Watchtower Bible and Tract Society of New York, Inc.* (2016) 246 Cal.App.4th 566, 596 ["Because Watchtower had not yet produced a privilege log or identified any specific confidential communications, it had not met its burden to show the preliminary facts supporting the application of the privilege. Thus, its privilege claim was premature."])

Defendant contends that *if* the court finds that the documents are not protected by the priest-penitent privilege, *then* the court would be violating the Establishment Clause and Due Process Clause. Along these lines, Defendant notes: "Precluding them because of their faith does not conform to the one-to-one ratio set forth in the language of the Code establishes the government's preference for certain religion over

others and discriminates against Jehovah's Witnesses by sending the message that 'they are outsiders.'" Here, the court's finding is not against the practices of Jehovah's Witnesses in contravention of the Constitution. Quite simply, moving party has made an insufficient showing that a penitent made a communication to a member *or members* of the clergy in *confidence*. If communication has not been made in confidence, the privilege does not apply and/or there is an intentional waiver of asserting the privilege.

Thus, the request for a protective order as framed by Defendant is denied. The disclosure of any such information should redact the names and personal identifying information of potential victims of molestation and the names of the elders in the congregation who authored the responses to protect third-parties' right to privacy. In addition, use and dissemination of information is limited for purposes of this litigation only.

**Request No. 19**

Request No. 19 provides: "Any and all individual written accounts, reports, summaries, letters, emails, facsimiles, and records, whether or not complied, concerning reports of sexual abuse of children by members of the Jehovah's Witnesses, including but not limited to, Governing Body members, district overseers, circuit overseers, elders, ministerial servants, pioneers, publishers, baptized publishers, and individuals from the time period of 1979 to the present."

First, the Court finds request is overbroad as to time. Plaintiffs allege abuse in mid 1990s, and seek documents from 1979 to the present. Although Plaintiffs' counsel served the same broad category of documents in *Lopez v. Watchtower Bible and Tract Society of New York, Inc.* (2016) 246 Cal.App.4th 566, 576-577, Plaintiff Lopez in that case was abused in 1986, Watchtower in that case did not propose any time limits that it considered reasonable, and the Court of Appeal in *Lopez* recognized that a 27-year post-incident time period is unusual. (*Id.* at 573 and 594.) Here, the incident occurred in mid 1990s and Defendant proposes a time-limit of 1994-1997.

In addition, the request infringes on third parties' right to privacy. The court finds the right to protect third-parties' right to privacy outweighs the need for the information sought. The personal identifying information of third parties will be redacted.

Defendant proposes a compromise wherein responsive documents will be produced subject to: (1) redaction of personally-identifying information for alleged third-party victims and third party participants; (2) a protective order to govern use of such documents; (3) redaction of personal and congregation-identifying information of those allegedly involved in unrelated incidents of child sex abuse; (4) a limited scope of 1994-1997 (relevant time period); and (5) a geographic scope limited to California. Plaintiff only agreed to redact the names of third-party victims of child sex abuse and has otherwise rejected Defendant's offer of compromise.

In the opposition papers, Plaintiff argues (in part) that there is no need to redact the personal and congregation-identifying information. Plaintiff contends that the Court of Appeal in *Padron v. Watchtower Bible and Tract Society of New York, Inc.* (2017) 16 Cal.App.5th 1246 was not persuaded by this argument.

With respect to redacting congregation-identifying information, the court finds the evidence submitted does not sufficiently reflect that disclosure of the congregation would result in the identification of the

identities of third-party redacted victims. In addition, the evidence may reflect a known history of certain child sex abuses by Defendant organizations and their negligence in failing to address this issue. Therefore, the court declines to issue a protective order redacting the congregation-identifying information.

In addition, the proposed limitation in scope of 1994 – 1997 (3 years) is too narrow. The court will adopt a limitation in scope to 5 years before and 5 years after the incident (*i.e*, 1989 – 1999). Further, the limitation of geographical scope (*i.e.*, California) is too narrow in that Responding Party is the *highest* level of governance located in New York; its *negligence* may not be limited to incidents in California, but may extend and be reflected in their knowledge of sexual molestation and failure to address the issue in *other* states.

With respect to request no. 19, the court GRANTS Defendant's request for a protective order and limit any document production to the terms as follows: (1) redaction of personally-identifying information for alleged third-party victims and third party participants; (2) a protective order to govern use of such documents (*i.e.*, use and dissemination is limited for purposes of this litigation only); and (3) a limited scope of time from 1989-1999.

**Objections**

Plaintiffs filed Objections to the Expert Declarations submitted in support of the Motion for Protective Order. In the moving papers, Defendant submits expert testimony (via psychiatrist and psychologist) testifying as to the "harm" to individuals of child sex abuse if their identities are disclosed. The declarations appear to be submitted to show that the privacy rights of third-parties outweigh any need for the information sought. This expert testimony is not really relevant to the Court's ruling on this Motion for Protective Order, and the Court is not required to issue a ruling on this evidentiary objection.

**Superior Court of California**
**County of Orange**
Civil and Probate/Mental Health Division
700 Civic Center Drive West
Santa Ana, California 92701
C11

Hasler
05/17/2018
US POSTAGE $000.68





K & L GATES LLP
1 PARK PLAZA, 12TH FLOOR
IRVINE, CA 92614

RECEIVED
MAY 21 2018
K&L Gates LLP



92614$5910 C024

689 (R7/13)